IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_Mona Lisa Harrison_ ,           §
　　　　　　Petitioner,              §
　　　　　　　　　　　　　　　§
　　v.                           §       Civil Action No. _06-434 GMS_
_Patrick Ryan_ , Warden,         §
CHARLES M. OBERLY, III,          §
Attorney General of the          §
State of Delaware,               §
　　　　　Respondents.            §



REQUEST FOR CERTIFICATE OF PROBABLE CAUSE TO APPEAL

　　　　Petitioner, _Mona Harrison_ , hereby moves
the Honorable _Judge Gregory M Sleet_ , District Judge, to
issue a certificate of probable cause on the issues contained
within the objections to the Magistrate Report and Recommendations
(D.I. _____ _____; D.I. _____ _____), or, in the event that the
Certificate of Probable Cause is denied, to include the Statement
of Reasons for denying the Certificate of Probable Cause, as
required by Fed.R.App.P 22(b). See, Brown v. Booker, 622 F.Supp.
993, at 997-998 (E.D.Va.1985)(quoting Barefoot v. Estelle, 463 U.S.
880, 893 (1983)). See also, McCoy v. Wainwright, 630 F.Supp. 122,
123-124 (S.D.Fla.1986). The accompanying and attached Motion for
Leave to Proceed in Forma Pauperis is hereby incorporated by way of
reference thereto. Fed.R.Civ.P.10(c)

　　　　1. The grounds within the petitions and objections are not
frivolous within the meaning of 28 U.S.C. § 1915(d). See, McCoy,
630 F.Supp. at 124.

2.  The grounds to be presented on appeal represent the denial of fundamental constitutional rights that are essential to the proper functioning of the adversarial processes of a criminal trial.

3.  In addition to the required demonstration of the deprivations of federal rights, the issues are ones which are debatable among jurists of reason within the Court of Appeals who could well reach a different conclusion than the District Judge. Alternatively, the questions are adequate enough to deserve encouragement to proceed further. Compare, e.g., Lozado v. Deeds, --U.S.--; 111 S.Ct. 869 (1991) with United States v. Smith, 793 F.2d. 85 (3rd Cir. 1986)(en banc), cert.denied, 479 U.S. 1031 (1987).

4.  It is otherwise in the interest of justice for the Court of Appeals to review the case on its merits. McCoy v. Wainwright, 630 F.Supp. 122, 124 (S.D.Fla. 1986).

WHEREFORE, petitioner respectfully moves this Honorable Court for the issuance of the Certificate of Probable Cause to Appeal.

Alternatively, if the Certificate of Probable Cause is denied, to state the reasons for the denial pursuant to Fed.R.App.P. 22(b).

Respectfully submitted,

Mona Lisa Hanison

DATED:  6-22-07

Bldg. ___ ___, Cell _____

PETITIONER PRO SE

SUPERIOR COURT
OF THE
STATE OF DELAWARE

RICHARD F. STOKES
JUDGE

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5264

February 6, 2006

Mona Lisa Harrison
W.C.I.
660 Baylor Boulevard
New Castle, DE 19720

RE: State v. Harrison, Def. ID# 87S00410DI

DATE SUBMITTED: January 6, 2006

Dear Ms. Harrison:

Pending before the Court is a motion for postconviction relief which defendant Mona Lisa
Harrison ("defendant") has filed pursuant to Superior Court Criminal Rule 61 ("Rule 61"). Also
pending is a motion for appointment of counsel to represent her in this Rule 61 proceeding. This is
the Court's decision denying the Rule 61 motion. Because this motion is summarily dismissed,
there is no reason to appoint an attorney, and the Court denies that request, also.

In June, 1987, defendant and others caused the death of William A. Hastings during a
botched robbery attempt. Defendant was present when a plan to rob someone was hatched, she
accompanied the co-defendants to the site of the crime, and she was waiting in the car while her
co-defendants attempted to rob Mr. Hastings. They shot him, beat him, and left him to die.

1

$\mathcal{E}x, C$

Defendant was indicted on charges of attempted robbery in the first degree; possession of a deadly weapon during the commission of a felony (3 counts); conspiracy in the second degree; two counts of murder in the first degree; and possession of a destructive weapon. On December 18, 1987, defendant entered into a plea agreement whereby she pled guilty to a charge of murder in the second degree in exchange for the State of Delaware ("the State") dropping the remaining charges.

Defendant's trial counsel was T. Henley Graves, now the Honorable T. Henley Graves.

A review of the guilty plea form, the plea agreement, a checklist memorandum, and the transcript of the plea colloquy which took place on December 18, 1987, shows the following.

Trial counsel and defendant reviewed the State's theory of felony murder under both first and second degree as to liability for the conduct of others. It was made clear that defendant understood that her sentence would be life with parole, and that life with parole meant forty-five years, with the earliest parole date being eleven years, seven months. She understood this was the sentence that had to be imposed; there was no choice in the matter. She also understood the trial rights she was giving up. She understood felony murder was the charge; her lack of intent regarding the murder was irrelevant; and the fact she did not actually inflict Mr. Hastings' wounds was irrelevant. When asked if anyone had threatened her or promised her anything, she responded: "No." When asked if this plea was her free and voluntary decision, she responded: "Yes." In her own writing, she noted on the guilty plea form that the mandatory minimum penalty was life subject to parole. She confirmed that she had had sufficient time to discuss the matter with trial counsel and her family, she did not need further time for making her decision regarding the plea, she believed she had had a good lawyer, and she was satisfied with trial counsel's representation of her.

2

A presentence investigation report was prepared so that the Parole Board would have information at the time defendant appeared before that Board. Defendant was sentenced on March 31, 1988. The sentence had to be life. 11 Del. C. §§ 635, 4205(b)(1), (c) (Repl. 1987). This life sentence was subject to parole. 11 Del. C. § 4346(c) (Repl. 1987).[1]

✳ Defendant did not appeal. Thus, the judgment in her case became final for Rule 61 purposes on April 30, 1988. Super. Ct. Crim. Rule 61(m)(1).[2]

Defendant now has filed her motion for postconviction relief. She alleges ineffective assistance of counsel. In support of her claims of ineffective assistance of counsel, defendant argues the following.

First, she argues she "felt pressured to take the Plea". She claims trial counsel told her she "would" be found guilty of first degree murder if she went to trial. In further support thereof, she states she:

was told by counsel that defendant "was guilty" of murder, if for no other reason because she knew of the robbery. She felt she was guilty because she was told she was.

She also argues that trial counsel was ineffective for not informing her that she had time limits for filing a sentence modification and a postconviction motion.

Defendant explains as follows as to why she did not raise these issues earlier:

_____

[1]Defendant originally was paroled in January, 1996. She has been in and out of prison since then, having obtained various sets of new charges and parole violations over the years. She currently is incarcerated on another parole violation.

[2]In Super. Ct. Crim. R. 61(m)(1), it is provided in pertinent part:

(m) *Definition.* A judgment of conviction is final for the purpose of this rule as follows:
(1) If the defendant does not file a direct appeal, 30 days after the Superior Court imposes sentence....

3

I (defendant) was twenty years of age and was naive to law matters. Counsel did not legally inform her correctly. It was stated she would still be young when she was released and was told to take the plea. State didn't want to afford bill for trial.

The first step this Court must take is to see if any of the procedural bars of Rule 61 apply.[3]

The claim is time-barred unless one of the exceptions in Rule 61(i)(5) applies. Murphy v.

State, Del. Supr., No. 377, 1998, Berger, J. (October 26, 1998) at 4. There is no question regarding

the Court's jurisdiction over the matter. Thus, in order to establish an exception to the time bar,

defendant must show there is a colorable claim that the conviction was undermined by a substantial

constitutional violation amounting to a miscarriage of justice. Id. This fundamental fairness

---

[3]In Rule 61(i), it is provided as follows:

*Bars to relief.* (1) Time limitation. A motion for postconviction relief may not be filed more than three years after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than three years after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.

(2) Repetitive motion. Any ground for relief that was not asserted in a prior postconviction proceeding, as required by subdivision (b)(2) of this rule, is thereafter barred, unless consideration of the claim in warranted in the interest of justice.

(3) Procedural default. Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows

(A) Cause for relief from the procedural default and

(B) Prejudice from violation of the movant's rights.

(4) Former adjudication. Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice.

(5) Bars inapplicable. The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.

4

exception is extremely limited and the defendant has the burden of proving its existence. Id. at 5-6;

State v. Durham, Del. Super., Cr. A. No. IN81-11-0002-R1, Cooch, J. (Dec. 21, 1992) at 6. As

explained in State v. Durham, supra:

> Whether a guilty plea has been entered knowingly and voluntarily is a concern of
> constitutional implication that justifies an extension of the three-year time limitation
> for a motion for postconviction relief, Webster v. State, Del. Supr., 604 A.2d 1354,
> 1366 (1992) (holding that the trial court must determine, despite the fact that the
> motion is time-barred, whether a plea was entered knowingly and voluntarily).

In light of the foregoing, I consider defendant's claim of coercion. A review of the

paperwork which accompanied the plea and the transcript of the plea, as summarized earlier in this

decision, evidences there was no coercion. The plea defendant entered was knowing and voluntary.

This claim fails.

Defendant's other claim is that trial counsel was ineffective for failing to inform her about a

motion to modify her sentence pursuant to Superior Court Criminal Rule 35(b)[4] and a motion for

postconviction relief. This claim is not appropriate for a Rule 61 motion because it does not

address the proceedings leading to the judgment of conviction. However, even if the Court

considered the claim pursuant to a Rule 61 motion, it fails.

First, the claim is time-barred and defendant has not shown the existence of an exception to

the time bar. However, even if she showed an exception, the claim would be denied on the merits.

To establish a claim of ineffective assistance of counsel, defendant must show that trial counsel's

representation fell below an objective standard of reasonableness and but for the attorney's

unprofessional errors, the outcome of the trial would have been different. Strickland v.

___

[4]In Super. Ct. Crim. R. 35(b), it is provided: "The Court may reduce a sentence of
imprisonment on a motion made within 90 days after the sentence is imposed."

5

Washington, 466 U.S. 668 (1984). With regard to the actual prejudice aspect, "[d]efendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694. In this case, defendant cannot show the prejudice aspect of an ineffective assistance of counsel claim.

A motion for reduction of sentence must be filed within ninety (90) days after the sentence is imposed. Super. Ct. Crim. R. 35(b). Defendant did, in fact, file a timely motion for modification of sentence by letter dated May 24, 1988. The Court, in its letter of May 26, 1988, denied the motion because defendant's sentence was mandatory. This claim regarding the Rule 35(b) motion is legally meritless.

The only Rule 61 issue which defendant has raised here is the coercion issue. The Court has denied that issue now and would have denied it even if it had been filed earlier. This claim, too, is meritless.

For the foregoing reasons, this Court denies the pending motions for postconviction relief and for appointment of counsel.

IT IS SO ORDERED.

Very truly yours,

Richard F. Stokes

cc: Prothonotary's Office
Department of Justice
The Honorable T. Henley Graves

6

The record in the defendant's case show that she was arrested on 6/12/1987 and subsequently a True Bill on 7/13/1987 – Rule 9 warrant issued on 7/15/1987 – Rule 9 returned 7/24/1987. Arraigned, waived reading – entered Pleas Not guilty 7/24/1987. N.G.J.T. Discovery Request 7/29/1987. Motion for proof positive Hearing – Bail denied.

Defendant's case shows she was initially indicted on nine charges. Defendant entered a guilty plea to one of the nine charges, which was Murder Second degree L.I.O. s87-06-0163. 12/18/1987 and a P.S.I. was ordered.

Following the defendant's plea on 12/18/1987 the defendant was sentenced to imprisonment balance of natural life. A 45-year sentence, parole eligibility in 11 years 6 months. The Defendant was not informed of the fact that a motion for sentence reduction could be put in or that it had to be done within 90 days of sentence. Superior Court criminal Rule 61, it and been procedurally established that if a motion for withdrawal of plea is filed anytime after imposition of sentence, a plea may be set aside only by a motion pursuant to Rule 61.

The standard under Rule 61 by which to judge a defendant's request to withdraw a guilty plea is whether the defendant has shown "prejudice" amounting to manifest injustice or a miscarriage of justice because of a constitutional violation. The procedural requirements of Rule 61 (;) (1) demands that a Rule 61 motion must be filed within three years from the final judgment.

In this case, a fact to be considered is that although defendant was sentenced on 3/31/1988 and her motion for a reduction of sentence wasn't timely filed due to grounds one and two ineffective counsel. Prejudice amounting to manifest injustice. The Superior court has stated that defendant did, infact, file a timely motion for modification of sentence by letter dated May 24, 1988.

However, based on the above principles embodied in Superior court criminal Rule 61 – defendant's motion to withdraw her guilty plea is predicated upon claims of ineffective assistance of counsel, where in she maintains that had been deprived of substantial constitutional rights. Therefore, despite the fact that the defendants motion is being presented after her sentence, defendant states that her application is the appropriate remedy available to her and she will demonstrate that her case does meet the required standard of "fair and just reasons" as prescribed by present day Rule, "prejudice amounting to manifest injustice" under Rule 61: whereby this court should exercise it's duty to correct the manifest injustice done in her case, and set aside the judgment of conviction and permit her to withdraw her plea. State v. Insley, Del. Supr., 141 A. 2d 619, 622 (1958), Allen v. State, Del. Supr., A2d 87, 89 (1986) Citine Smith v. State, Del. Supr., 451 A.2d 837, 839 (1982)

Defendant argues that she was denied her right to effective assistance of counsel guaranteed by the Sixth Amendment of the United States constitution during the initial stages of her plea negotiation. This questions the validity of her plea as to whether it was knowingly and voluntarily made. In order to prevail on a motion for withdrawal of a guilty plea, alleging ineffective assistance of counsel, defendant must establish that her counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's error, she would not have pled guilty. Hill v. Lockhart, 474 U.S. 52,58,106 S. Ct. 356, 370, 80 L. Ed. 2d 203 (1985) Albury v. State Del. Supr., 551 A2d 53, 58 (1988), citing Strickland v. Washington, 104 S. Ct. 2052

The defendant is bound by her signed statement on the guilty plea form absent clear and convincing evidence to the contrary. Fullman v. State, Del. Supr. NO. 268, (1988), Christie C.J. (Feb. 22, 1989) (order). However, Superior Court Criminal rule 11 sets out the procedures that must be followed before accepting a plea of guilty. See present day Supr. Ct. Crim. R. 11. © (d) (e). Under Rule 11 (d) the court has an affirmative duty to ascertain whether a plea of guilty has been entered knowingly and voluntarily. See Brown v. State, Del. Supr. 250 A.2d 503 (1969), Well v. State. Del. Supr., 398 A. 2d. 161, 162, 163 (1978), See also McCarthy v. United States, 394 U.S. 459 (19690, where the United States Supreme Court has made it quite clear that a constitutional right does exist to assuring that a guilty plea is made knowingly and voluntarily. Since defendant has a right to effective assistance of counsel at every stage of the proceeding to the extent that defendant recognizes the duty vested in the court to comply with the provisions of Rule 11 (d), the defendant contends the thrust of her claim is based primarily on errors within the context of ineffective assistance of counsel. See and compare Chaton v. White, 858 F.2d 1479 (11th cir. 1988), thus questions the validity of the acceptance of her initial plea offer as to whether it was knowingly and voluntarily made.

Her, as established previously, counsel personally negotiated the initial plea bargain agreement offered by the state with defendant, counsel communicated to defendant and advised her to accept the state's plea offer. Defendant asserts that her counsel violated the rules of professional conduct by not providing effective assistance due to the following actions on his part. The defendant felt pressured to take a plea with no other potions available to her. Defendant was told to accept the plea offer and see that she will be still young when she gets out. That she would more than likely be found guilty of First Degree Murder and all other charges if she went to trial. That the State of Delaware did not want to foot the bill (cost) fro a murder trial.

Rules of professional conduct reads in pertinent part: rule 1. 1A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill thoroughness and preparation reasonable necessary for the representation. Not with standing the provisions of :

Rule 1.4

{b}     a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Thus, the defendant had misinterpretation of the facts and misunderstanding of law relevant to the situation at hand. Hence violated defendant's Sixth Amendment, right to effective assistance of counsel. Due to counsel's actions, defendant was deprived of the opportunity to be completely and fully appraised of her legal right including the nature of the initial plea offer.

In light of the circumstances surrounding what occurred in defendant's case prior to the entry of her actual plea agreement, not withstanding the fact that she signed the plea agreement form, which was ratified by the court, defendant maintains that she has sufficiently demonstrated that due to the deficient performance of her counsel, it was presumptively impossible for the decision to accept the initial plea offer to have been knowingly and voluntarily made by her, which is the central concern in her claim.

Therefore, defendant states that she has effectively established sufficient showing of actual and substantial prejudice resulting from counsel's acts which questions the validity of the acceptance of the initial plea offer, as to whether it was knowingly and voluntarily made. Defendant further maintains that counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's error, she would not have pled guilty. See Hill, Supra; Albury, supra; and Strickland, supra.

Defendant was held accountable for the actions of others. See U.S. v. Standchich 550 F2d 1294 (2d Cir. 1977) and U.S. v. Geaney (417 F2d 1116) (2d Cir. 1969). Evidence did not show defendant conspired to kill victim. Defendant felt she was guilty because, she was told she was by her counsel. Interpretation of "Language of the law" Holding of Supreme Ct. (De) in the Williams's case and Kirk case. (A2d) 2002-2003 Language " in the furtherance of the Felony" other words – Kill in order to commit the Felony. Defendant would not have pled guilty – to any other language. The defendant did not kill or intend to kill the victim, or cause the death of such person.

Defendant was at a very young age during the time of proceedings. There was no knowledge of the law and defendant relied solely on counsel's advice. Counsel, as previously stated, told the defendant to take the plea that which was offered to her. Stating that she (defendant) would still be young upon her release. Counsel stated, "the state did not want to afford cost of trial." Defendant was also not informed in regards to duress or extreme emotional distress as defined by law. Defendant suffered from both of these issues, as to being very young, having a 18 month old daughter and separation from child and of other family members.

Defendant claims to have been taken advantage of due to her lack of knowledge to law and use to other factors. Defendant truly feels that her counsel failed to inform her of any other option or to defend her to the best of his ability. Due to this fact, defendant has suffered tremendous loss. Not only of her only child but her own young years of life.

Defendant feels all things considered, she knowing now what she should of known then, she would not have taken the plea. As stated, "knowing or proving things to have turned out differently," defendants co-defendant Melvin Ward received a lesser sentence. Why – because of his lack of participation in said crime and the fact maybe being his counsel was paid monetary values. Based on the fact that Melvin Ward did in fact go to the scene of said crime and did not participate in any type action; he received a seventeen-year sentence. The defendant, whom never got out of the car, received a life sentence. This being how things could of turned out differently.

Therefore, defendant is seeking relief form the sentence imposed upon her 3/31/1988. Due to all factors mentioned in this briefing, the defendant is asking for the plea to be overturned, due to her having to suffer from ineffective counsel.

The relief, which is being sought, is to have a chance to receive a lesser amount of time for the part conspiracy to commit robbery. This crime ahs followed defendant for almost 19 years. As stated by Judge Stakkes, "defendant has been released on parole," which has nothing to do with the relief defendant is requesting. Defendant feels that due to the fact that a Murder 2nd follows her in her life's quests, that she cannot obtain a good quality job.

Defendant feels that with out the Murder 2nd charge on her record, she would not be where she is today. The defendant wishes to put all this behind her and to leave the

State of Delaware. To start her life a new, somewhere that no one knows of her pat life. She wishes to finish the Harbor House Mental Health program she is in, so that she may get to the root of her drug addiction – which she has obtained through her incarceration. If not for the length of time defendant has endured these past 19 years, the defendant feels she would not have acquired a cocaine habit. For defendant had no knowledge of such things or such persons who done such things as cocaine. By defendant being subjected to a life style of drugs within the prison walls – she was being taught a way to further it on the street.

Defendant pleads mercy of the court, to see that such grounds she has raised is sufficient enough to have her plea overturned. That by her having ineffective counsel, she be granted a lesser sentence or at least given a chance to receive a lesser sentence. Defendant is unsure of how the court decides or what her options truly are. Defendant feels she stands a better chance with Supreme Court as opposed to Superior Court. Due to the fact of personal prejudice. Which stems from co-workers of said counsel named in claim. Mr. T Henely Graves who is now Judge T. Henely Graves Superior Court. The defendant prays for equal ness and fairness, based solely on information contained within this briefing.


Signed,

*Mona Harrison*

Mona Harrison

In The Supreme Court of The State of Delaware

Mona Harrison
Defendant Below
Appellant
    v.

No. 107, 2006

State of Delaware
Plaintiff Below
Appellee.

This would be an answering brief for the motion to affirm from Ms. Kim Ayvazian and for Superior Court. As stated in the motion to affirm, on December 18, 1987 Ms. Harrison entered a guilty plea to a lesser offense, of second-degree Murder. The plea in which her Rule 61 is based. The guilty plea in which she is claiming coercion form her then legal counsel T Henely Graves. Counsel stated to Ms. Harrison to take the plea and that the court does not want to pay for the cost of a trial. As stated in the opening brief, Ms. Harrison feels taken advantage of due to her age and lack of legal knowledge. A very vulnerable, young and naïve individual. Suffering from stress and duress.

As stated in the motion, Ms. Harrison moved for a post-conviction relief on January 5, 2006 and was denied on February 6, 2006. The Superior Court stated that the claim is time-barred unless one of the exceptions in Rule 61 (i) (5) applies. In other words, it has to be a substantial constitutional violation amounting to a miscarriage of justice, Id. Ms. Harrison feels she has stated that in her opening brief – a "substantial constitutional violation amounting to a miscarriage of justice." By her being taken advantage of and her counsel being ineffective at the time of her court proceedings.

It was stated, that because Ms. Harrison did not appeal from the conviction, her conviction became final in April 1988, after the passage of 30 days following sentencing. The Superior Court itself stated, "a motion for reduction of sentence must be filed within 90 days after the sentence is imposed. Super. Ct-Crim R. 35(b) Defendant did in fact file a timely motion for modification of sentence by letter dated May 24, 1988." So therefore, Ms. Harrison did in fact file in a timely manner for a sentence reduction on her own. Ms. Harrison was never informed by her legal counsel, as to any other options for relief from her sentence. Ms. Harrison was told to take a guilty plea for a 2nd degree Murder, which entailed a life sentence. Told that she was guilty of murder because she knew of the robbery.

Ms. Harrison feels that because of Judge Stokes being a co-worker and friend of the now Judge T. Henely Graves, that her Rule 61 was not looked at un-biasly.

The Superior Court stated, "with regard to the actual prejudice aspect," (d) defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. "Strickland v. Washington, 466 U.S. at 694. As stated, Ms. Harrison had no intentions of harming the victim. That she took no physical part in the crime and that it was so stated that, Ms. Harrison was not at the scene of the crime as was one of her co-defendant Mr. Melvin Ward. The court papers sent to me have him named as the one who shot the victim but, that is incorrect. Mr. Ward wasn't the one, Mr. Hammond was. Mr. Ward did not take part in the crime itself either as for Ms. Harrison. Mr. Ward who did not give in to pressures of taking a plea, received a seventeen (17) year sentence for his role in the incident. Mr. Ward was at the scene near the house, Ms. Harrison was in the car about one half mile away from the scene. Noting that, if in fact Ms. Harrison wasn't coerced into taking her plea, the proceeding would of most definitely turned out differently. (Ward v. State)

The Superior Court states that the guilty plea was knowingly and voluntary. Ms. Harrison states that her counsel told her to take it. That she would still be young when she got out. It was, what was best for her and for Mr. Smith – which of course, Judge T. Henely Graves in fact represented both individuals, at the same time. The state has not been able to prove that counsel for Ms. Harrison, did in fact work effectively and in the best interest of Ms. Harrison. Just as they stated her rule 61 claim is barred due to time-bar, however Ms. Harrison feels she has proved a miscarriage of justice, which would remove the time-bar and allow the Rule 61 to stand. There are conflicting statements form the Superior Court Judge Stokes and the Deputy Attorney General, which Ms. Harrison has shown. Therefore Ms. Harrison moves to have her guilty plea overturned. That she has suffered a huge loss over the last nineteen (19) years. One that continues to follow and haunt her. Ms. Harrison prays on the court to get a fir hearing and for the Supreme Court to carefully read all statements from herself, Superior Court and D. A Ms. Ayvazian. She would like to put it all behind her and move away to another state with her soon to be husband. Ms. Harrison also asks the court to listen only to what pertains to the case itself. The judgment should therefore be overturned.


Mona Harrison
D.J.B.W.C.I.
660 Baylor Blvd.
New Castle, DE 19720

# reacting to prison ruling

## Violent criminals' release dates may be postponed

By ESTEBAN PARRA
and PATRICK JACKSON
The News Journal

House Majority Leader Wayne A. Smith said Monday he is working on a bill to keep nearly 200 violent criminals, who are or will soon be eligible for parole, from being released – even if the Delaware Supreme Court rules they have completed their sentences.

The state Supreme Court ruled in November that a 57-year-old rapist sentenced to life in prison with the possibility of parole could be released in 45 years or fewer. That's because before Delaware's Truth in Sentencing Act of 1989, which changed the definition of a life sentence to a natural life.

Before the law's June 30, 1990, enactment, a life sentence was considered 45 years, and some convicts could receive time off for good behavior.

The state Attorney General's Office appealed the decision, but the court denied the appeal earlier this month. Attorney General M. Jane Brady and some legislators now are looking for ways to keep some of the eligible convicts from being released.

"The law is very restrictive," said Smith, R-Clair Manor. "If [Supreme Court Justices] thought we needed to clarify something, that could have been done with civilized conversation over a hot toddy instead of something like this. ... These are dangerous people and something like this calls for a legislative solution."

Brady said she is pushing for a law that would define and set criteria to keep these violent and sexual offenders in prison even after their sentences are up. She also said she is working on a plan to closely supervise these inmates once they are released.

"I have great concerns for the victims," she said. "I need now to look for avenues to protect the public."

As of Monday evening, her office had identified 189 inmates eligible for

# Sentencing: Governor 'concerned' about issue

FROM PAGE B1

murder, rape and kidnapping, would not be released until the victims or their families were notified, Brady said. None of the 10 who are eligible for release this week has been contacted of murder, she said.

The court's decision does not affect sentences imposed for crimes committed after June 30, 1990, nor does it affect inmates convicted of first-degree murder who were sentenced to life without parole.

Smith said he has discussed the situation with House Majority Whip Clifford "Biff" Lee, R-Laurel, and Sen. James T. Vaughn Sr., D-Clayton, and is expecting that solution to materialize this week. "This is the beauty of being a small state," Smith said. "When something like this happens, we can turn on a dime."

Smith didn't talk to the governor's office, but Gregory Patterson, Gov. Ruth Ann Minner's communications director, said

the ruling has "concerned" the governor. "Certainly, the governor has concerns about something that could cause this much concern to the people of Delaware," Patterson said. "The governor would be likely to support legislation that does something about it."

Vaughn said he supports quick action as well, although he may summon justices before his Senate Judiciary Committee to explain their actions.

Defense attorney Joseph A.

Gabay said legislators should study the issue before enacting laws to keep people in prison past their sentences.

"I think you go down a dangerous road when you start locking up people beyond their sentence," Gabay said. "If they serve their time, that's the price they paid."

Contact Esteban Parra at 324-2299 or eparra@delawareonline.com. Contact Patrick Jackson at 678-4274 or pjackson@delawareonline.com.

4346. Eligibility for Parole

(c) The Board shall have authority to
   act where the max term has been
   commuted by Governor. Also for all
   ~~purposes~~ purposes of this section,
a person sentenced to imprisonment for
life shall be considered as having
been sentenced to a fixed term of 45 yrs

[11 Del. C. 1453, 4346; 54 Del. Laws c.349,

   Jackson V. Multi-Purpose Criminal
   Justice Facility, Del. Supr. 700 A. 2d
                                    1203
                                   (1997)

Crosby, 824 A 2d. 900          Sentenced T I S
                               Before 1989 - 1990

( Ward V State
   45 year Sentence )

Appeals from an order of Superior Court denying his motion for correction of an illegal sentence. We reverse the Superior Courts denial of Evans motion and remand the case to Superior Court for determination of whether Evans has earned any good behavior or merit credits, and for recalculation of Evans conditional release date consistent with our holding that Evans life sentence should be considered a 45 year term.

## Facts

Sept. 29, 1982 jury convicted Evans 1st degree rape. Sentence "life in prison with possibility of parole."

Status Sheet completed by D.O.C. did not give Evans a conditional release date. Rather, it listed Evans maximum release date as "death" and recites his maximum sentence, less good time as "life".

In 1993, 1996 and 1999, Board of Parole denied Evans request for parole. January 8, 2004, Evans filed a motion with Superior Court, claiming his sentence was illegal. Evans argued that under the conditional release statue he was entitled to have a conditional release date

② calculated as a 45 year

term.

Superior Court denied Evans motion and Evans
appealed. On appeal Evans maintains that this courts
decision in Crosby Vs. State[2] requires his life sentence
be calculated as a 45 year term for purposes of
determining determining his qualification for conditional
release. We agree.

✱ The Proper Term of Years for Calculating
Evans' Conditional Release Date

Evans appeal presents issues of statutory
interpretation, which this court reviews "de novo.[3]"
As long as sentence falls within the statutory
maximum, an order of the Superior Court denying
a motion for modification of that sentence is
reviewed for abuse of discretion.[4]
Under Superior Court Rule 35(a), a defendant is entitled
to have an illegal sentence corrected at any time. Evan
argues that his sentence, as applied by the D.O.C., is
illegal, because it does not provide a conditional release
date. Evans urges that the conditional Release Statue

3 incorporates the definition of a "life sentence"[6] that is set forth in the parole statute, and that under that latter definition, his life sentence must be fixed as a 45 year term for purposes of calculating his conditional release date.

Sections 4346 and 4348 of Title 11 establish the rules for the parole ~~board~~ and the conditional release of inmates. for purposes of determining eligibility for parole, Section 4346 (c) expressly states that a life sentence should be considered "a fixed term of 45 years." Section 4348 provides that an inmate is entitled to conditional release at the expiration of the maximum term sentenced, less any merit and good time credits earned. Although Section 4348 contains no separate definition of "life sentence," it does provide that a person (conditionally released shall "be deemed as released upon parole." Evans contends that Section 4348 incorporates Section 4346 (c)'s definition of a life sentence as a 45 year term. In 1997, in Jackson v. Multi-purpose Criminal Justice Facility, this Court held that Section 4348

did not incorporate the term "25 year term" defined by Section 4346. In 1948, however, we expressly overrule that holding in Crosby vs. State, in which we held that Sections 4346(c) and 4348 must be read in pari materia, and that as so read, Section 4348 incorporates Section 4346(c)'s definition of a life Sentence as a 45 year term.

We noted Crosby that Sections 4346 and 4348 were enacted at the same time and are contained in the same chapter of the Delaware Code. Section 4346(c) provides that a life Sentence must be considered as a 45 year term for purposes of both determining eligibility for parole under Section 4346(a) and accelerating that eligibility through merit and good behavior credits Section 4348 provides that an inmate conditional release date can be accelerated by merit and good behavior credits, and that conditional release shall "be deemed as on parole." On that basis, we conclude that Section 4348 incorporates Section 4346(c) definition of a life Sentence as a fixed 45 year term.

s   our ruling in Crosby controls Evans' life sentence. A.
such, that sentence is illegal because Evans' maximum
release date does not reflect that 45 year term. Although
the State urges us to limit our holding in Crosby to
felons sentenced under the habitual offender statute
there is no principled way to read Crosby in that
manner. Although the defendant in Crosby was
sentenced under the habitual criminal statute,[8]
our holding with respect to sections 4346(c) and
4348 did not in any way turn on that fact,

We limit our holding in this case to crimes
committed before June 30, 1990, the effective date
of the T.I.S. Act of 1989. ~~That~~ The Act
prospectively eliminated good time credits for inmates
serving a life sentence imposed for a Class A
felony.[9] As we recognized in Crosby, by eliminating such
good time credits, the General Assembly intended
that a life sentence imposed for Class A felonies
would no longer be considered a term of 45 years but,
rather be a natural life sentence.[10] The T.I.S. Act does
not control Evans' sentence, however, because the crime

6 For which he was sentenced was committed before
June 30, 1990. Accordingly, Evans is entitled to have
his conditional release date accelerated by whatever
good time credits he has earned or may earn in

the future.

Both parties raise the issue of whether Evans has
earned any good time or merit credits." The record does
not contain sufficient information to permit a calculation
of Evan's good time or merit credits. On remand, the
Superior Court shall address, so that any credits
earned by Evans will be applied to the 45
year term so as to advance his conditional

release date.

## Conclusion

For the foregoing reasons, the Superior Court's
order refusing to modify Evan's sentence was
erroneous. The judgement of the Superior Court is
therefore reversed and this matter is remanded to
the Superior Court for a determination of whether Evans

appropriate adjustment of his "maximum release date"

1 Sitting by designation pursuant to Del. CONST. art IV, 38 and Del. Code Ann. tit 29, § 5610 (a)(2)(2001) and Del. Supr. CT. R. 2, 4.

2 824 A. 2d (Del 2003)

3 State V. Lewis 797 A. 2d 1198, 1199 (Del 2002), Jacks V. Multi Purpose Criminal Justice Facility, 700 A. 2d 1203, 1205 (Del. 1997)

4 Lewis, 797 A. 2d at 1202, Mayes V. State. 604 A. 2d 8 842-43 (Del. 1992)

5 11 Del. C. 4348

6 11 Del. C. 4346

7 Crosby, 824 A 2d. 899

8 11 Del. C. 4214

9 11 Del. C. 4381 (a).

* Mrs. Kline, this is the law I was talking about;
↓

10 Crosby, 824 A. 2d. at 900. The General Assembly, by amendi the Delaware Code in this manner, impliedly recognized tha



U.S.M.S.
X-RAY

Office of the Clerk
United States District Court
844 N. King Street, Lockbox 18
Wilmington, Delaware 19801-3570

Dona Harrison
60 Baylor Blvd
New Castle, De. 19720